# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| G. MICHAEL MCNAMEE, ) | |
| ) | |
| Plaintiff, ) | No. 17 C 02057 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| MINXRAY, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff G. Michael McNamee filed this suit against Defendant MinXray, Inc., alleging two breach of contract claims centered around agreements for the licensing and manufacture of various portable x-ray technologies.[1] R.1, Compl. ¶¶ 17-23.[2] MinXray now brings a motion to dismiss Count One of McNamee's complaint for failure to state a claim. R. 7, Mot. to Dismiss. For the reasons that follow, MinXray's motion to dismiss is denied.

## I. Background

When evaluating a motion to dismiss, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). McNamee is an inventor of portable x-ray and imaging equipment. Compl. ¶ 8. MinXray makes, sells, and distributes portable

---

[1]This Court has subject matter jurisdiction over the case under diversity of citizenship, 28 U.S.C. § 1332. *See also* R. 28, 8/2/17 Minute Entry (confirming that the subject matter jurisdiction inquiry has been satisfied).

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

x-ray and imaging products. *Id.* In 2006, McNamee and MinXray entered into an agreement, Compl. Exh. 1, 2006 Agreement, to keep certain proprietary information confidential while they explored a possible business relationship. *Id.* ¶¶ 5-6. That agreement defined "proprietary" information as information given by McNamee to MinXray about McNamee's suppliers, his trade secrets, formulas, product plans, specifications, trademarks, copyrights, and other intellectual property information. *Id.* ¶ 6. The Agreement also specifically defined proprietary information to include information related to "a Mobile Digital X-ray Unit," known by the acronym "MDX." *Id.* The definition explained that MDX is "a portable stand designed to mount to a portable x-ray generator with any digital radiology detector plate and any laptop computer." *Id.*

The 2006 Agreement further stated that McNamee would own outright any products developed from the proprietary information given to MinXray, and that MinXray would not be entitled to any royalty, commission, or payment for sale of those products without McNamee's consent. Compl. ¶ 6. According to the complaint, over the next two years, McNamee gave MinXray a few different types of proprietary information, specifically information about: (i) MDX; (ii) "portable housings for digital imaging equipment," called a "Digital Imaging Housing Package" (DIHP); (iii) the design, making, and selling of direct radiography (DR) portable and mobile equipment; and (iv) the design, making, and selling of "portable and mobile medical equipment in general." *Id.* ¶ 7.

2

On May 15, 2008, McNamee and MinXray formed the business relationship contemplated by the 2006 Agreement, signing a new contract called "License and Consulting Service Agreement." Compl. ¶ 8; R. 1, Compl., Exh. 2, 2008 Agreement. The new agreement granted MinXray a license to make and sell McNamee's "DIHP" (Digital Imaging Housing Package) invention and gave McNamee royalties for each sale. 2008 Agreement. McNamee alleges that starting from the date of the 2008 Agreement through May 15, 2015, MinXray designed, made, or sold five products that incorporated his DIHP technology: CMDR-1S, CMDR-2S, MDRK-2, CMDR-2SLW, and Integris. Compl. ¶ 9. MinXray paid McNamee royalties for three of these products, but did not pay McNamee royalties for CMDR-2SLW or Integris because it disputed that those products were covered by the 2008 Agreement. *Id.* ¶¶ 10, 12-13.

In July 2015, McNamee wrote to MinXray, asserting a right to receive royalties for CMDR-2SLW and Integris, and requesting MinXray's sales records for both of those products. Compl. ¶ 11. Believing that CMDR-2SLW and Integris used his DIHP technology, McNamee repeatedly wrote to MinXray asking for royalties. *Id.* ¶ 14. MinXray refused to turn over the sales records, maintaining that it had paid royalties on all products covered by the 2008 Agreement, and arguing that CMDR-2SLW and Integris models "do not incorporate the technology developed by [McNamee] under our agreement." *Id.* ¶¶ 12, 15-16.

In bringing this suit, McNamee alleges two breach of contract claims. Compl. ¶¶ 17-23. Count One arises out of the 2006 Agreement. *Id.* ¶¶ 17-20. Assuming for

3

the purpose of this count that the CMDR-2SLW and Integris models do not use McNamee's DIHP technology, McNamee alleges that these two products are based on other proprietary information (such as information relating to the Mobile Digital X-Ray Unit and "mobile medical equipment utilizing [direct radiography]") that McNamee provided to MinXray under the 2006 Agreement. *Id.* ¶ 18. In "designing, manufacturing, and/or selling" CMDR-2SLW and Integris based on McNamee's proprietary information, MinXray allegedly breached the 2006 Agreement. *Id.* ¶¶ 19-20.

In the alternative, McNamee alleges that CMDR-2SLW and Integris *do* incorporate the DIHP technology and are thus covered by the 2008 Agreement. Compl. ¶¶ 21-23. Because MinXray has not paid royalties on these two products, McNamee contends that MinXray has breached the 2008 Agreement and owes him a $2,500 royalty payment for each sale of the relevant products between May 2008 and May 2015, and for any sale thereafter (because a royalty-free license to sell that was to be granted to MinXray by McNamee in 2015 is now allegedly null and void). *Id.* ¶ 23.

MinXray initially brought a motion to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6), Mot. to Dismiss, arguing that neither count adequately stated a claim, but later withdrew its motion as against the second count (breach of 2008 Agreement). MinXray also withdrew one aspect of its argument against the first count (breach of 2006 Agreement). *See* R. 18, 5/17/17

Letter by MinXray, Inc.; *see also* R. 20, 5/18/17 Letter by McNamee.[3] This Opinion addresses the remaining argument in the dismissal motion.

## II. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also E.E.O.C v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Factual allegations—as opposed to mere legal conclusions—are

---

[3]MinXray also originally filed a counterclaim against McNamee, R. 10, Counterclaim, but later withdrew it voluntarily, R. 17, 5/16/17 MinXray Notice of Voluntary Dismissal.

entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

To state a breach of contract claim under Minnesota law,[4] McNamee needs to allege: (1) formation of a contract; (2) performance by himself of any conditions precedent to his right to performance by MinXray; and (3) breach of the contract by MinXray. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Here, in Count One, McNamee sufficiently alleges the formation of the 2006 Agreement and has included sections of the agreement in the complaint and as an attached exhibit. Compl. at 2-4; 2006 Agreement. Taking McNamee's allegations as true at this stage, it appears that McNamee performed his conditions by giving proprietary information (unrelated to Digital Imaging Housing Package technology) to MinXray. Compl. at 4-5. As to the last requirement, McNamee also adequately alleges a breach by MinXray—specifically, that it used some of the proprietary information that McNamee gave it to "design[ ], manufactur[e], and/or sell[ ]" two product models (CMDR-2SLW and Integris) based on the information without getting McNamee's permission or compensating him for it. *Id.* at 9-10.

MinXray's motion to dismiss argues, first, that McNamee fails to state a claim because his complaint effectively states only that MinXray *might* have

---

[4]As discussed in Section IV below, neither party engages in a choice of law analysis. Because the 2006 Agreement states that Minnesota law governs, this Court will apply Minnesota law in this Opinion, but the parties should explicitly take positions on choice of law going forward.

6

breached the 2006 Agreement, not that it *did* breach that agreement. R. 8, Mot. to Dismiss Br. at 6-7; R. 25, Def's. Rep. Br. at 1-3. This argument hinges on McNamee's use of the phrase "and/or" when describing how MinXray used his proprietary information. MinXray contends that in using the word "or" in the phrase "designed, manufactured and/or sold," the complaint alleges at least one scenario which does not state a valid claim: that MinXray merely *sold* a product that it did not develop or manufacture, and thus did not make any use of McNamee's proprietary information. Following that thinking, MinXray could not be liable for breach of contract to McNamee if it were merely *selling* something designed and manufactured "by someone else (who presumably had invented the same thing that the plaintiff had invented)." Def's. Rep. Br. at 2.

This is a hyper-technical argument that overlooks the fact that McNamee did state a valid claim when he used the word "and" in the phrase "and/or." In using the word "and," the complaint alleges that MinXray developed, manufactured, *and* sold a product based on the McNamee's proprietary information. Although it might have been better for McNamee to only use the word "and" instead of the phrase "and/or," his complaint does state a valid claim. The days of code pleading are long past. Complaints do not fail for using a phrase like "and/or" when describing a defendant's actions.[5]

---

[5]And even if an extra "or" could hypothetically sink a complaint, MinXray's argument on this front would still not be a sure thing. It is true that in everyday speech, the coordinating conjunction "or" very often suggests exclusivity (that is, "x or y" means one of them but not both), but that is not always the case. And in the realm of statutory construction, courts read "or" as "and" when the context is appropriate. *See, e.g., Demko v. United States*, 44 Fed. Cl. 83, 89 (1999), *aff'd*, 216 F.3d 1049 (Fed. Cir. 2000) ("[C]ourts have

MinXray's next argument is that McNamee has not alleged enough facts in the complaint, and has not described the proprietary information with enough specificity and detail to survive a motion to dismiss. Mot. to Dismiss Br. at 7-10; Def's. Resp. Br. at 3-10. But the complaint does allege more than mere labels and conclusions. On the contract's formation, there are plenty of factual details about his relationship with MinXray, the agreements, and the sequence of events. With regard to the proprietary information at issue, courts in this District have held that "trade secrets 'need not be disclosed in detail in a complaint.'" *Mission Measurement v. Blackbaud, Inc.*, 216 F.Supp.3d 915, 921 (N.D. Ill. 2016) (quoting *Covenant Aviation Sec., LLC v. Berry*, 15 F.Supp.3d 813, 818 (N.D. Ill. 2014)). For a complaint that involves trade secrets or proprietary information, "[a]t the pleading stage, plaintiffs need only describe the information … in general terms." *Mission Measurement*, 216 F.Supp.3d at 921 (citing *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, No. 14 C 7505, 2015 WL 4945240 at *3 (N.D. Ill. Aug. 19, 2015)). Furthermore, courts in this District "only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F.Supp.2d 846, 850 (N.D. Ill. 2011). Thus, McNamee does not need

---

not adhered strictly to [the reading of "or" as exclusive]. … For instance, '[i]t is settled that 'or' may be read to mean 'and' when the context so indicates.' *Willis v. United States*, 719 F.2d 608, 612 (2d Cir. 1983); … *see also De Sylva v. Ballentine*, 351 U.S. 570, 573 (1956) ('We start with the proposition that the word 'or' is often used as a careless substitute for the word 'and'; that is, it is often used in phrases where 'and' would express the thought with greater clarity.'); *Union Ins. Co. v. United States*, 73 U.S. 759, 764 (1867) ('But when we look beyond the mere words to the obvious intent we cannot help seeing the word 'or' must be taken conjunctively.... This construction impairs no rights of the parties ... and carries into effect the true intention of Congress....').")

to describe the specific proprietary information or trade secrets in great detail in order to defeat a motion to dismiss.

To be sure, there is still a bar that a plaintiff must exceed in providing specifics about the trade secrets or proprietary information in dispute. McNamee misses the mark when he argues that he does not need to describe the proprietary information in detail because "to disclose the information in a complaint would destroy its proprietary nature." R. 21, Pl's. Resp. Br at 13. The risk of public disclosure is no reason to avoid notice-pleading requirements: of course there are ways to place portions of a complaint under seal when secrecy is justified by concerns over proprietary information or trade secrets.

The bottom line is that McNamee must allege enough facts and enough detail to give MinXray *notice* of the claim and "the grounds upon which it rests." *Twombly*, 550 U.S. at 555. And he has done that. Not only has he alleged enough facts about the 2006 Agreement and the sequence of events, he has also identified the products at issue (CMDR-2SLW and Integris) and described the proprietary information he believes was unlawfully taken (the technology of MDX and DR as defined by the 2006 Agreement). Compl. ¶¶ 17-19. What's more, in light of MinXray and McNamee's preexisting relationship, the disclosures in advance of their business relationship, and the fact that "proprietary information" is defined by the 2006 Agreement, MinXray has sufficient notice of the claim against it and the grounds upon which the claim rests.

MinXray further argues that McNamee's complaint is deficient because it does not allege "when the information was conveyed." Mot. to Dismiss Br. at 10. In support of this proposition, MinXray points to Rule 9(f) which states: "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). According to MinXray, the Court cannot reasonably form a conclusion about whether McNamee is entitled to relief because McNamee does not meet "his Rule 9(f) obligations." Def's. Rep. Br. at 10. This argument is unpersuasive for two reasons. First, the word "material" as used in Rule 9(f) means important, rather than an absolute requirement in all cases. Sometimes a complaint, because of the nature of the case or because of the context provided by other allegations, need not recite precise time or place. *See Matthew v. United States*, 452 F.Supp.2d 433, 446 (S.D.N.Y. 2006) ("Rule 9(f) does not require the pleader to set out specific allegations of time and place"). Put another way, the extent to which allegations of time or place are "material" to a pleading depends on the type of claim alleged and the nature of the case. Here, the parties allegedly had an agreement under which McNamee provided MinXray with proprietary information, so the exact time and place of the transmittal of information is not likely to be the type of surprise, out-of-the-blue allegation that would cause MinXray to wonder what is being claimed.

Second, McNamee *does* allege time and place in his complaint. Compl. ¶¶ 9-13. He sets forth the dates of the agreements, the dates of his correspondence with MinXray, and the timeframe in which MinXray sold CMDR-2SLW and Integris in

alleged breach of the 2006 Agreement. *Id.* at 2, 4-5, 7-11. Indeed, according to McNamee, the breach is still happening right now, with each sale of a CMDR-2SLW or Integris. Compl. at 10. MinXray's arguments to dismiss the complaint thus fall short.

## IV. Choice of Law

As noted earlier, neither party engages in a choice of law analysis. When parties fail to raise choice-of-law issues, a federal court sitting in diversity will apply the choice-of-law law rules of the state in which it sits. *Camp v. TNT Logistics Corp*, 553 F.3d 502, 505 (7th Cir. 2009). Under Illinois conflict of law rules, a breach of contract claim is "governed by the law of the forum provided in the contract unless the pertinent laws of that forum violate the public policy of Illinois." *Landon v. GTE Commc'ns Servs. Inc.*, 696 F.Supp. 1213, 1219 (N.D. Ill. 1988). Because the 2006 Agreement specified Minnesota law, Compl. ¶ 6, the court applied Minnesota law in evaluating McNamee's complaint. But as the litigation progresses, the parties must take an explicit position on which state's law applies.

## V. Conclusion

For the reasons discussed above, MinXray's motion to dismiss is denied. The status hearing of January 8, 2018 remains as scheduled.

ENTERED:

<u>     s/Edmond E. Chang     </u>
Honorable Edmond E. Chang
United States District Judge

DATE: December 6, 2017